IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

99 APR -1 PM 3:12

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

APR - 1 1999

JULIA LAWSON,                    )
                                 )
        Plaintiff,               )
                                 )
v.                               )          CV-97-AR-3114-S
                                 )
BAPTIST HEALTH SYSTEMS, et al.,  )
                                 )
        Defendants.              )

**MEMORANDUM OPINION**

Currently before the court are two motions for summary judgment, one filed by defendant Baptist Health Systems, Inc. ("BHS") on November 30, 1998, and another filed jointly by defendants Trans-General Life Insurance Company and Trans-General Service Company, Inc. on December 1, 1998.  After three successive motions for extensions to the briefing schedule were granted, plaintiff, Julia Lawson ("Lawson"), requested oral argument on the motions, contending that the issues are so complex that a hearing would aid the court in its deliberation. After the court granted Lawson's motion and set the matter for hearing, Lawson later moved to continue the hearing, but the court's patience began to wear thin, and the motion was denied. Oral argument was heard on the two motions for summary judgment on February 19, 1999, and both motions came under submission after that date.



Posture of the Case

In February 1997, Lawson filed the present action in Jefferson County Circuit Court against sole defendant BHS, which is the parent company of plaintiff's former employer Baptist Montclair Hospital ("Baptist Montclair"), alleging breach of contract and seeking a declaratory judgment entitling her to long-term disability benefits.  At or around the same time, Lawson also filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that BHS had unlawfully discriminated against her on the basis of her alleged medical disability, in violation of the Americans With Disability Act, 42 U.S.C. § 12101 *et seq*. ("ADA").  The EEOC notified Lawson of her right to sue on July 31, 1997.  In October 1997, Lawson amended her complaint in the state court action to include a claim against BHS under the ADA, as well as under Ala. Code § 25-5-11.1 (1975) for alleged retaliatory discharge.  Lawson also added defendants Trans-General Services Company, Inc., Trans-General Life Insurance Company, and Penn-Well, Inc.  The record indicates that Trans-General Services Company, Inc. and Penn-Well, Inc. are the same corporate entity, with "Penn-Well" no longer being the proper corporate designation after an official name change occurred.  Accordingly, this court treats Penn-Well, Inc. as a non-entity and proceeds as though only two defendants, instead of three, were added to the original complaint.  Both Trans-General

companies are hereinafter jointly referred to as "Trans-General".
The action was removed to this court on November 28, 1998.   After
a year of discovery, the action comes before the court on the two
above-referenced motions for summary judgment.

The court initially acknowledges the relative complexity of
this case, not because any of the discrete claims present
especially difficult questions of law, but because plaintiff has
peppered the court with a multitude of claims and theories.
Recognizing the realities of litigation strategies, the court
understands that "shotgun" pleadings frequently underlie a
plaintiff's hopes of creating a factual dispute in order to
survive summary judgment or inducing defendants to settle without
having to chase every rabbit to ground.   The court does not mean
to suggest that plaintiff's counsel cannot argue each of the
present claims with a straight face - indeed, counsel has managed
to find a legal theory on which to hang plaintiff's hat for each
and every one of her claims.   Nevertheless, precisely where such
scatter-shot pleadings threaten to overwhelm limited judicial
resources, thereby encouraging courts to pass "complex" cases to
juries, a court surely has a heightened responsibility to
scrutinize plaintiff's case, lest plaintiff's pleading strategy
be rewarded for its imprecision.

Summarizing plaintiff's claims, the court reads only four
enumerated "counts" in Lawson's amended complaint, but the court

understands Lawson to intend that six claims be stated, but with only four separated into counts.  The four counts are as follows:

Count One:  Breach of contract claim against BHS.

Count Two:  Declaratory judgment request, to the effect that Lawson is entitled to disability benefits from any one or all of defendants.

Count Three:  Retaliatory discharge claim against BHS under Alabama's worker's compensation law, Ala. Code § 25-5-11.1 (1975)

Count Four:  Bad faith breach of contract, under Alabama common law, against all defendants.  This court understands this claim to encompass and subsume a simple breach of contract claim against Trans-General as well, even though Count One does not explicitly allege breach of contract by Trans-General.[1]

---

[1]Under Alabama law, in order to demonstrate a bad faith breach of contract, a plaintiff must prove, among other things, the existence of an insurance contract between the parties and a breach thereof by the defendant. *See, e.g. Loyal American Life Ins. V. Mattiace*, 679 So.2d 229, 234 (Ala. 1996)("Loyal American Life").  Thus, every bad faith breach of contract claim assumes a parallel claim for breach of contract.

Additionally, paragraph six[2] of the Amended Complaint avers
that Lawson "is entitled to damages from [BHS] for her
constructive discharge." Paragraph eight of the Amended
Complaint avers that Lawson "has fulfilled all of the conditions
precedent to the institution of an action" under the ADA.
Nowhere does Lawson follow these averments with an explicit
statement that she intends to bring either a constructive
discharge claim or an ADA claim. Unfortunately, BHS has replied
only to the ADA claim in its briefs. Nevertheless, the court
concludes that these paragraphs are sufficient to satisfy the
requirements of notice pleading, such that BHS was made
adequately aware of Lawson's claims for constructive discharge
and discrimination under the ADA. This court intends to consider
both these claims in addition to the four explicitly stated
"counts." As will become clear, however, BHS will not be
prejudiced by its inattention to the issue of constructive
discharge. Except as listed above, the court perceives no
additional claims among Lawson's wide-ranging allegations.

After scrutinizing the mightily voluminous record, having
construed all material factual disputes in plaintiff's favor, the

---

[2] Lawson's Amended Complaint contains typographical errors
which mistakenly number certain paragraphs out of order, so that
one succession of paragraphs is numbered as followed: 6, 7, 6,
7, 8, 9, and so on. The constructive discharge claim is found in
the first paragraph which is labeled "6".

court finds that nearly all of Lawson's six claims are due to be dismissed.  As discussed, *infra*, no material factual disputes exist with regard to any of Lawson's claims except Count Two (for declaratory judgment) and Count Four, but only insofar as it states a plain vanilla breach of contract claim against Trans-General.  The court therefore finds that defendants are entitled to judgment as a matter of law on each count except these two, so partial summary judgment is due to be granted.

<u>Pertinent Undisputed Facts</u>

Lawson has suffered from problems with her back for many years.  It appears from the record that she first injured her back in 1982 as a result of a car accident.  Despite this injury, Lawson was able to continue productive employment.  She began work as a registered nurse for Baptist Montclair in 1989, as part of the nursing staff in the hospital's psychiatric unit.  In 1992, while attempting to restrain a psychotic patient, Lawson injured her back again.  She received worker's compensation benefits for several months while recuperating, but then returned to work.  Later Lawson became the "Assessment Coordinator" for Baptist Montclair's "Skilled Nursing Facility" ("SNF").  The job of Assessment Coordinator appears to have been largely sedentary, involving, among other things, the completion of numerous state and/or federal forms documenting compliance with applicable

regulations.  In February 1995, while working at the SNF, Lawson
tripped over a telephone cord and injured her back a final time.
At that time, she did not miss work, take a leave of absence, or
receive worker's compensation benefits.

By July 1995, her back was still bothering her, causing
considerable "discomfort" which, she contends, rendered her
"unable to perform" her nursing duties. *Lawson depo.*, volume 1,
at 63.  She spoke with persons in Baptist Montclair's personnel
department about taking a leave of absence, something that they
apparently recommended.  When she inquired what level of benefits
were available under the long-term disability ("LTD") policy
provided by BHS, she was informed that benefits under the policy
would be equal to a certain, set amount derived from her then-
current salary level.  Lawson was advised that BHS policy only
guaranteed her a job for a finite period, and that if she
remained on leave longer than that period, she would need to
apply for positions available upon her return.  In her deposition
testimony, Lawson testified that she understood this policy when
it was explained to her.  *Lawson depo.*, volume 1, at 69-70.

Lawson actually took a leave of absence in July 1995.  On
August 13, 1995, she submitted a claim to Trans-General seeking
long-term disability benefits.  After months and months of mind-
wearying correspondence, Trans-General eventually denied Lawson's
claim.

In September 1996, Lawson met with Baptist Montclair's recruiting supervisor to discuss returning to work. Because her absence had exceeded the amount of time during which BHS policy would guarantee her job, Lawson had no expectation that her previous position would still be available. Lawson contends that the position was still available and was being advertised publicly. BHS argues, in response, that during Lawson's absence the SNF had determined that the job of Assessment Coordinator should be redefined to include some staff nursing responsibilities, such as direct patient care, so that "assessment coordination" itself would constitute only a portion of the full job. In essence, BHS argues that the job Lawson previously held no longer existed or had been subsumed by a newly-redefined job with the same title. Lawson was not given her old job.

Despite not having a position at Baptist Montclair, Lawson had not actually been terminated and was still considered an employee by the hospital. As such, Lawson was allowed to utilize the hospital's internal procedures for filling job vacancies. During the relevant periods, it was Baptist Montclair's policy to post notices of job vacancies for the benefit of persons already employed elsewhere within the hospital. Prior to advertising open positions to the public at large, Baptist Montclair employees were given an opportunity to apply for those jobs. In

addition to applying for the job of Assessment Coordinator, Lawson took advantage of this internal posting process to apply for eight other jobs at Baptist Montclair during late 1996 and early 1997. Six of these positions were regular nursing jobs involving direct patient care. Lawson also applied for a job as a "Collector" or as a "Medical Policy Writer" in the hospital's business department, despite the fact that the internal advertising plainly required relevant experience, and Lawson had none.

On March 26, 1998, Carolyn Hammons, who was then the new Interim Director of the SNF, filled out an "employee termination report," effectively firing Lawson. Since Hammons had become the Interim Director, three former SNF employees' names had continued to appear on SNF paperwork. BHS contends that Hammons did not know Lawson nor did she know of Lawson's circumstances, and that the termination was a purely administrative "house-cleaning" chore, a matter of paperwork.

By the time of the official termination, Lawson was no longer available for a position at Baptist Montclair in any case. In November of 1997, Lawson moved to Nashville, Tennessee. Since relocating, she has worked several jobs, including as a "nanny" (providing care to young children), as a housekeeper, and finally in a position known as "RN Evaluator" for a company named First Mental Health. Apparently, this job is substantially similar to

the position Lawson previously held as Assessment Coordinator in Baptist Monclair's SNF.

During much the period when Lawson was receiving neither regular income as a nurse nor disability benefits from Trans-General, Lawson did receive some income in the form of Social Security Disability ("SSD") benefits.  Lawson applied for SSD benefits at about the same time she applied for long-term disability benefits from Trans-General. SSD benefits were initially denied, but on appeal an administrative law judge did award them to her.  From the record the court cannot ascertain whether Lawson continues to receive these benefits to the present.

<u>Analysis of Lawson's Claims</u>

1. <u>Retaliatory Discharge</u>

The court begins its analysis with consideration of Lawson's claim for retaliatory discharge (Count Three of the Amended Complaint).  Ordinarily, this court may not assume jurisdiction of any worker's compensation claim.  According to federal statute, "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). On past occasions this court has determined that retaliatory discharge claims are implicated by that federal statute, *see,*

*e.g., Payne v. Wal-Mart Stores, Inc.*, CV-98-AR-2663-J (1998), because Alabama's statutory worker's compensation scheme includes the following provision: "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover worker's compensation benefits." Ala. Code § 25-5-11.  Precisely this statutory provision is invoked by Count Three of Lawson's Amended Complaint, which states that Lawson claims damages against BHS for retaliatory discharge in violation of this statutory provision.  Ordinarily, therefore, this court would be inclined to think that this case had been improvidently removed from the Alabama state court.

In the present case, however, this court finds that its normal inclination is outweighed by its consternation at meritless scatter-shot pleadings, which, although surely designed to prevent this action's removability, nevertheless fail to reference a claim which might possibly arise under the workmen's compensation scheme of the state of Alabama.  Clearly, in order to state a claim of retaliatory discharge, Lawson must at least show the court that she "instituted or maintained *any* action" against BHS to recover worker's compensation benefits.  It does not appear from the record that this threshold matter is satisfied.

Although true that Lawson claimed and received worker's compensation benefits for a brief period after she injured her back in 1992, Lawson concedes that she is not alleging retaliation arising from that incident.  Instead, she presents the novel argument that because she inquired as to whether she ought to seek worker's compensation benefits after her 1995 injury, but was informed by BHS employees that such benefits were unavailable, she has met her burden of taking "action," such that a subsequent termination would present a *prima facie* case of retaliatory discharge.  This court disagrees.

Lawson has directed this court to no binding or persuasive authority which would stand for the principle that a retaliatory discharge claim can be maintained without first committing some act against which an employer may retaliate.  The court acknowledges that Lawson need not have filed a civil action seeking worker's compensation benefits in order to satisfy this burden.  However, even if BHS employees mistakenly advised Lawson about the propriety of filing a claim for worker's compensation benefits, and even if bad advice influenced Lawson not to file such a claim, Lawson nevertheless must actually *seek* benefits in such a way that BHS could reasonably be said to retaliate against her.

As it stands, Lawson presents a baseless claim which cannot "arise" under Alabama's statutory scheme, thereby preventing

removeability, because she simply never filed a worker's
compensation claim in the first place.  This court refuses to
allow this claim -- part of the frustrating shotgun pleading --
to proceed.

    For all these reasons, Lawson's retaliatory discharge claim
is devoid of merit and due to be dismissed.


2.  Constructive Discharge

    The general principle of constructive discharge is explained
in *Young v. Southwestern Savings and Loan Association*, 509 F.2d
140 (5th Cir. 1975), as follows:

> The general rule is that if the employer deliberately
> makes an employee's working conditions so intolerable
> that the employee is forced into an involuntary
> resignation, then the employer has encompassed a
> constructive discharge and is liable for any illegal
> conduct involved therein as if it had formally
> discharged the aggrieved employee.

*Id., at 144*.

    Constructive discharge claims must overcome a high
threshold.  Lawson would have to prove that BHS created an
environment which *compelled* her to resign.  *See, e.g., Hill v.
Winn-Dixie* Stores, Inc., 934 F.2d 1518 (11th Cir. 1991).
Furthermore, the court would have to find that reasonable people
could not disagree that she was so compelled.  *Id*.

    In the present case, Lawson mentions constructive discharge,
as if in passing, in her Amended Complaint, and the claim is

thereafter undeveloped.  Defendants have apparently overlooked the charge, perhaps out of negligence, but more likely because this claim is so obviously lacking in merit that briefing is hardly necessary.  The court understands that Lawson may have found work intolerable due to her back pain, but it cannot be argued that BHS created that intolerable circumstance. Furthermore, Lawson never resigned from Baptist Montclair, but was officially terminated only after she had moved to Tennessee. Whatever claims might arise from such termination, she may not pursue a constructive discharge claim.  Accordingly, this claim is due to be dismissed.


3.   ADA Claim

     Within the ADA framework, an employer may not discriminate against an employee on the basis of that employee's disability if the disability, when reasonably accommodated by the employer, does not prevent the employee from doing the job.  The nature of "reasonable accommodation" is inevitably at the heart of ADA disputes, but whatever it means, an employer's obligations reasonably to accommodate disabled employees do not include an obligation to alter job descriptions substantially.  *See, e.g.,* *Turco v. Hoechst Celanese Chemicl Group, Inc.*, 906 F.Supp. 1120 (S.D. Tex. 1995).  If a disabled employee truly cannot do the job, an employer is not required to pretend that she can.

Disability insurance exists for the precise purpose of protecting an individual's economic security under the kinds of circumstances when his or her job is not protected under the ADA.

In order to bring an ADA claim, a plaintiff needs to demonstrate first that she is "disabled," as that term is defined in ADA jurisprudence.  Furthermore, a plaintiff must show that she is a "qualified" disabled person, as defined under the ADA, which means essentially that the disability can reasonably be accommodated.

Lawson appears to find herself between a rock and a hard place.  She is attempting to argue that she is indeed a qualified disabled person, and that BHS failed to offer reasonable accommodation, in violation of the ADA.  At the same time, however, Lawson argues that she is entitled to disability benefits because she is unable to perform the duties of her job as a nurse.  As a matter of logic, Lawson is either one or the other, "qualified" (even with accommodation) or "disabled," but not both.

BHS contends that Lawson could not be accommodated reasonably, which is to say that she was not a "qualified" individual under the ADA.  It is undisputed that Lawson's doctors had prohibited her from lifting only small weights, and it is also undisputed that all BHS nursing jobs require an ability to lift heavier amounts (due to direct patient care

responsibilities).  Because BHS would have had to substantially amend Lawson's responsibilities as an R.N. to accommodate her lifting restrictions while protecting the safety of patients, the court would probably conclude that Lawson was not a qualified disabled person, as a matter of law, with regard to the staff nursing jobs for which she applied.  If the court so concluded, then to the extent that BHS denied her those positions, it could not have violated the ADA.  But this court will not have an occasion to determine the merits of the ADA claim, as discussed *infra*.

Lawson also applied for several positions not requiring direct patient care.  Because her lifting restrictions would not necessarily have prevented her from performing the duties of those positions, the lifting restrictions alone would not have prevented her from being a "qualified" individual under the ADA. BHS argues, however, that Lawson was simply inexperienced, untrained, and therefore unqualified for the positions of "Collector" or "Medical Policy Writer" in the hospital's business department.  BHS also contends that the job of RN Assessment Coordinator had been altered to include a degree of direct patient care, thus precluding Lawson on account of her lifting restrictions.  At least as these last three positions are concerned, there appears to be a dispute regarding whether Lawson should be deemed a qualified disabled individual under the ADA.

This court need not reach the merits of any of Lawson's ADA claims. For purposes of summary judgment consideration, it is unnecessary to determine whether Lawson was disabled under the ADA, whether her purported disabilities might have been accommodated, or whether potential accommodations would have imposed an unreasonable burden upon BHS. Why? Because the court finds that Lawson is precluded altogether, pursuant to the doctrine of judicial estoppel, from claiming that she is a qualified disabled person under the ADA. In her attempts to secure long-term disability benefits from Trans-General and SSD benefits from the federal government, Lawson has represented on numerous occasions that she was totally disabled due to ailments in her back. Following the doctrine of judicial estoppel, as outlined in this Circuit, Lawson must be precluded from arguing that she is a qualified individual under the ADA.

One judge in this judicial district has already considered this issue under analogous circumstances. See Taylor v. Food World, 946 F.Supp. 937 (N.D.Ala. 1996)("Taylor I"). In that case, Judge Hancock found that sworn representations of disability in an application for SSD benefits would, per se, preclude that claimant from taking a contrary position in a subsequent ADA action. On appeal, the Eleventh Circuit reversed on this issue, holding as follows:

Recently, this court addressed the issue of whether a
plaintiff who applies for and receives disability benefits is *per
se* judicially estopped from later bringing a claim under the ADA.
*See Talavera v. School Board of Palm Beach Co.*, No. 96-4756 (11th
Cir. Nov.24, 1997).  After an extensive discussion of the holdings
of other courts of appeals presented with this question, this
court determined that a certification of total disability on a
disability benefits application is not inherently inconsistent
with being "qualified" under the ADA.  *See id.*  This court
reasoned that the [Social Security Administration], in determining
whether an individual is entitled to disability benefits, does not
take account of the effect of reasonable accommodation on an
individual's ability to work.  *See id; accord Swanks v. Washington
Metro. Area Transit Auth'y*, 116 F.3d 582, 585 (D.C.Cir.1997).
Accordingly, the determination of whether an individual who has
certified total disability to the SSA is judicially estopped from
later bringing a claim under the ADA will depend upon the specific
statements made in the application and other relevant evidence in
the record.  *See id.*

*Taylor v. Food World, Inc.*, 133 F.3d 1419, 1422-1423 (11th Cir.
1998) ("Taylor II").

This court does not intend to apply a *per se* rule of
estoppel in this case.  However, this court agrees both with
Judge Hancock and with the Eleventh Circuit that judicial
estoppel ought be "applied to the calculated assertion of
divergent sworn positions... to prevent parties from making a
mockery of justice by inconsistent pleadings.  *Taylor I*, at 1422,
*citing McKinnon v. Blue Cross and Blue Shield of Ala.*, 935 F.2d
1187, 1192 (11th Cir. 1991).  In short, this court agrees with
the Seventh Circuit in *Weigel v. Target Stores*, 122 F.3d 461 (7th
Cir. 1997)("Weigel"), to which BHS directs this court's
attention:

When employees (and/or their physicians) represent that they are
"totally disabled," wholly unable to work," or some other variant
to the same effect, employers and factfinders are entitled to take
them at their word; and, such representations are relevant

            evidence of the extent of a plaintiff's disability, upon which an
            employer may rely in attempting to establish that an ADA plaintiff
            is not a "qualified individual with a disability."
*Weigel*, at 467-68.

This court recognizes that Lawson may feel "squeezed"
between BHS, who effectively told her that she is disabled and
could not work, and Trans-General, who appeared to conclude that
she is not disabled and therefore not entitled to long-term
disability benefits. Nevertheless, applying the rule from *Taylor
II*, *supra*, the court determines that Lawson's specific sworn
representations about both her ongoing back pain and particular
limitations would, if relied upon by BHS, entitle BHS, as her
employer, to conclude that she was not qualified for any position
for which she applied. Because judicial estoppel applies,
Lawson's ADA claim is due to be dismissed.


4.   <u>Breach of Contract and Bad Faith Breach of Contract</u>

Insofar as Lawson alleges a breach of contract by BHS,
little is required to dispose of the claim. Lawson appears to
indicate that she and BHS entered into a contract at the time she
took a leave of absence in 1995. In her amended complaint, she
avers that "[BHS]... told [her] that she would be paid disability
of $1,600.00 per month." Perhaps as an attempt to characterize
this alleged statement as a promise for which consideration was
given, the amended complaint further states "Lawson avers that

she and [BHS]... agreed that Lawson would accept a medical leave of absence and would not process any claims against Baptist; which agreement was accepted by Lawson because Baptist told her that it had determined that it would not continue her active employment." At the hearing on February 19, 1999, however, counsel for Lawson explicitly denied any intention to allege the formation of a contract at the time Lawson began her leave. If no contract was formed then, BHS could not have breached it.

Instead, counsel argued that BHS should be responsible for payment of long-term disability benefits whenever Trans-General fails to make those payments. Lawson contends that BHS is contractually bound in this manner by boilerplate text found in the summary policy description distributed by BHS to all new employees. That document states that Lawson may have rights under ERISA, including "the right to file suit in a state or federal court if your claim for benefits under the employee benefit plan is denied or ignored." However, at that same hearing on February 19, 1999, Lawson's counsel likewise explicitly disavowed making an ERISA claim. This is for good reason, of course. Lawson's counsel understood then, as the court understands now, that the scope of ERISA preemption is broad. If Lawson were to state an ERISA claim, she would be precluded from bringing most, if not all of her other present claims. If Lawson wishes to base the current action against

Baptist on the boilerplate language of the summary plan description, she will have to be satisfied with the limited relief provided by ERISA.  This is precisely what Lawson hopes to avoid.  Because Lawson disclaims any ERISA-based causes of action, there simply cannot be a breach under the ERISA language of the boilerplate provisions in the summary plan description.

This court fails to find the existence of *any* contract between BHS and Lawson, according to which BHS could be contractually liable for long-term disability benefits.  As a result, Lawson's breach of contract claim against BHS is due to be dismissed.  Likewise, BHS could not be liable for a bad faith breach of contract, since no contract was breached and because BHS was not Lawson's insurer, and this claim, as against BHS, is also due to be dismissed.

Lawson's bad faith breach of contract claim against Trans-General is another matter.  The lion's share of the record is comprised of evidentiary materials documenting the exchange of letters, phone calls, applications, and other forms between Lawson and Trans-General regarding Lawson's pursuit of long-term disability benefits.  The relevant contract of insurance required Lawson to submit "satisfactory" proof of her disability before Trans-General would pay benefits. Despite Trans-General's insistence to the contrary, there is indeed a degree of ambiguity in the term "satisfactory."  If Trans-General were allowed to

define that term according to whim or caprice, the contract itself would be illusory. Construing the term in such a manner to prevent it from *becoming* illusory, this court reads the contract to require Lawson to provide *reasonably* satisfactory proof of disability. This is clearly the standard anticipated by the contract, which states, in pertinent part, that "No [long-term disability benefits] will be paid unless you provide us with satisfactory proof of loss... You must submit the following documents at you expense: ... Such other documents as we may *reasonably* require." *Trans-General's Exhibit 1-A*, p.23 (emphasis added).

Much of the rancor between Lawson and Trans-General revolved around Trans-General's insistence that Lawson provide "objective" medical evidence of disability, including items such lab results, MRI's, X-rays, or other clinical diagnostic findings. Lawson's counsel apparently mistook the word "objective" to refer to the bias or lack of bias of Lawson's treating physicians. It seems clear enough to this court that Trans-General did not intend to impugn the professional integrity of any physicians, but intended instead to protect itself against fraud. The requirement of objective evidence seems a reasonable requirement to this court, but reasonableness is a factual determination which this court is not permitted to make. Even if objective evidence were not an

unreasonable requirement, there remains a dispute as to whether Lawson in fact provided it.

Having several times reviewed the correspondence between Lawson and Trans-General, it seems to this court that the parties were talking past one another – that Trans-General repeatedly and patiently requested objective medical documentation of disability and that Lawson repeatedly and impatiently insisted either that she had already complied or that Trans-General's request was somehow flawed and frustratingly arrogant.  The court finds that a reasonable jury could conclude that Trans-General set a reasonable standard for "satisfactory" proof, that this standard was adequately communicated to Lawson, but that Lawson failed to comply.  If such were the case, not only would Trans-General have no liability for breach of contract, but Trans-General could not possibly have committed an act of bad faith.  This court sympathizes with Lawson and her counsel in their unsuccessful attempts to satisfy Trans-General.  A jury might find that Trans-General was playing games, but because a reasonable jury could and might determine that Trans-General acted reasonably, Lawson's bad faith claim is due to be dismissed.  *See Loyal American Life*, at 235.

What remains in dispute is whether each party complied with obligations imposed by the insurance policy.  These are factual determinations outside the court's permissible role.  A jury

would have to determine whether Lawson provided reasonably satisfactory proof of disability to Trans-General.  A jury would likewise have to determine whether Trans-General reasonably denied long-term disability benefits to Lawson.  Both questions cannot be answered either "Yes" or "No" at the same time.  If Lawson did provide adequate proof, then Trans-General wrongfully denied benefits. If Lawson failed to provide adequate proof of disability, then Trans-General acted in accordance with the contract.  Because these material factual issues remain is dispute, Lawson's claim for breach of contract, insofar as said claim targets Trans-General, survives summary judgment and will proceed toward trial.

5.  <u>Declaratory Judgment Claim</u>

Finally, Lawson's request for declaratory judgment also survives summary judgment consideration.  This court cannot declare any entitlements without first answering the factual questions set out, *supra*.  If Lawson provided reasonably satisfactory proof of disability to Trans-General, then she is entitled to a declaration that Trans-General owes her long-term disability benefits.  While a jury may resolve the factual questions, it may not provide declaratory relief, which is equitable in nature and therefore within the court's sole power to grant or to deny.  While this court could enter such relief,

it is not permitted to resolve material factual disputes.
Accordingly, this court will deny summary judgment on the
declaratory judgment claim and allow the issue to proceed to
trial.

The court notes now that it intends to bifurcate any
eventual trial so that the declaratory judgment request is not
presented to the jury.  After a jury has returned a verdict in
answer to specific interrogatories regarding the reasonableness
of Lawson's proof and Trans-General's denial of benefits, the
court will again consider this claim, taking into account the
jury determinations as appropriate.

Conclusion

For the foregoing reasons, the court finds that all claims
against BHS are due to be dismissed, with the result that the
*action itself*, insofar as it targets BHS, is due to be dismissed.
All claims against Trans-General, except the claims for breach of
contract and for a declaratory judgment, are also due to be
dismissed.  A separate and appropriate order will be entered.

DONE this __/ʳᵈ__ day of April, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE